U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN 14 2016

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JONATHAN LEBRUN | CIVIL ACTION NO. 15-1828 |
| VERSUS | JUDGE DOHERTY |
| BAKER HUGHES INC., ET AL. | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Currently pending before the Court are cross-motions for summary judgment on the issue of plaintiff's seaman status. For the reasons that follow, the Court finds plaintiff is not a Jones Act seaman. Accordingly, the motion for summary judgment [Doc. 12] filed by plaintiff Jonathan Lebrun is DENIED, and the motion for summary judgment [Doc. 21] filed by defendant Baker Hughes Oilfield Operations, Inc. ("BHOOI") is GRANTED.

**I.  Factual Background**

Plaintiff was employed by BHOOI as a "Field Service Specialist I" in its Surface Logging Services division, beginning in December of 2005. [Doc. 12-3, ¶ 1; Doc. 24-4 ¶ 1; Doc. 36-1, ¶ 1; Doc. 30, p. 3] According to plaintiff, his job duties were to collect mud samples from shale shakers and deliver the mud samples to on-site data engineers and geologists for analysis. [Doc. 12-2, p. 3] In early 2015, BHOOI assigned plaintiff to work a 28 day rotation aboard the DEEPWATER CHAMPION, a drillship owned and operated by defendant Transocean Offshore Deepwater Drilling, Inc. ("Transocean"), then drilling off the coast of Guyana, South America. [Doc. 12-2, p. 2] BHOOI notified plaintiff he would spend at least two work shifts on the DEEPWATER CHAMPION.

Plaintiff slept and ate aboard the vessel. [Doc. 12-3, pp. 1-3] On April 24, 2015, after completion of his first rotation, plaintiff was terminated by BHOOI, due to "a company-wide Reduction in Force ('RIF') necessitated by the severe downturn in the oil & gas exploration industry." [Doc. 21-4, ¶ 2; Doc. 12-2, p. 3]

Plaintiff brought this suit to recover for back injuries he alleges he incurred during his assignment to the DEEPWATER CHAMPION. [Doc. 1, pp. 3-5] Plaintiff asserts claims under the Jones Act, and under the general maritime law for unseaworthiness and maintenance and cure. The pending motions address only whether plaintiff is a seaman for purposes of the Jones Act.

### III. Applicable Law

#### A. Legal Standard

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Fed.R.Civ.P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at § (c)(1).

As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994)(internal citations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001).

### B.   Jones Act Seaman Status

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'" *Chandris, Inc. v. Latis*, 515 U.S. 347, 354 (1995)(citing 46 U.S.C. § 688). The term "seaman" is not defined in the Jones Act, but not every "maritime worker on a ship at sea . . . is automatically a member of the crew of the vessel within the meaning of the statutory terms." *Id.* at 363. A plaintiff claiming the benefits of the Jones Act bears the burden of establishing seaman status. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 390 (5th Cir. 2003).

To prove seaman status, a plaintiff must show: (1) his duties "contribut[ed] to the function of the vessel or to the accomplishment of its mission," and (2) he has "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). "[S]atisfying the first prong of the test is relatively easy: the claimant need only show that he 'do[es] the ship's work.'" *Becker* at 387-88 (quoting *Chandris* at 368). "This threshold requirement is 'very broad,' encompassing 'all who work at sea in the service of a ship.'" *Id.* at 388 (quoting *Chandris* at 368). The purpose of the second prong (*i.e.* the "substantial connection" requirement) is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based maritime workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Chandris* at 368. "Importantly, this second prong constitutes a 'status-based' standard - *i.e.*, 'it is not the employee's particular job that is determinative [of seaman status], but the employees connection to a vessel.'" *Becker* at 388 (quoting *Chandris* at 370)(alterations in original).

When determining whether an employee is a seaman (as opposed to, for example, a land-based employee temporarily working aboard a vessel), the court looks to the "total circumstances of an individual's employment" and must consider both "[t]he duration of a worker's connection to a vessel and the nature of the worker's activities." *Chandris* at 370. Thus, although the second prong "is not *merely* a temporal concept, . . . it necessarily includes a temporal element." *Id.* at 371 (emphasis in original). "Generally, . . . an appropriate rule of thumb for the ordinary case [is]: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* (suggesting summary judgment

may be appropriate where the plaintiff clearly cannot reach this threshold level).

"Because the determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact, it is usually inappropriate to take the question from the jury." *In re Endeavor Marine Inc.*, 234 F.3d 287, 290 (5th Cir. 2000)(citing *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554) (1997)); *see also Wallace v. Oceaneering Intern.*, 727 F.2d 427, 432 (5th Cir. 1984)("The issue is to be left to the jury even when the claim to seaman status appears to be relatively marginal"). "Nevertheless, summary judgment is mandated where the facts and the law will reasonably support only one conclusion." *Id.* (internal quotation marks and alterations omitted).

### III. Analysis

BHOOI contends plaintiff cannot meet the second prong of the seaman test, arguing plaintiff does not have "a connection to a vessel in navigation (or an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Chandris* at 368. It is undisputed that in the last five years of plaintiff's employment, plaintiff worked from twelve different vessels, owned by seven different drilling contractors. [Doc. 21-4, p. 4, ¶ 14; Doc. 36-1, p. 3, ¶ 14] During that same period of time, plaintiff was assigned to work on a land rig owned by Dow on thirteen different occasions. [Doc. 20-2, pp. 6-10; Doc. 12-5, pp. 11-36] An examination of plaintiff's work history for his last five years of employment reveals plaintiff performed approximately eighty-two percent of his work from vessels, and eighteen percent from land. During that same time period, approximately sixteen percent of plaintiff's work was performed from a vessel owned by Transocean.

A.  Whether plaintiff was a seaman by virtue of his connection to the DEEPWATER CHAMPION

Plaintiff contends his "last 28 day assignment to the DEEPWATER CHAMPION establishes seaman status." [Doc. 12-2, p. 6] In support of this argument, plaintiff states in January 2015, he was assigned by his employer to work a 28 day rotation aboard the DEEPWATER CHAMPION, and was further notified "he would spend at least two work shifts" on that vessel. [Doc. 12-2, p. 2] However, plaintiff's employment was terminated after his first rotation. [Id. at 2-3] Thus, plaintiff worked aboard the DEEPWATER CHAMPION from March 11 through April 6, 2015, for a total of 27 days. [Id. at 3]

"When a maritime worker's basic assignment changes, his seaman status may change as well." *Chandris* at 372. "If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." *Id.*; *see also Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 536 (5th Cir. 2015)(If an employee "receives a new work assignment before his accident in which either his essential duties or his work location is *permanently changed*, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new job")(internal quotation marks omitted; emphasis in original). "This reassignment exception applies only when an employee has 'undergone a *substantial change* in status, not simply [by] serv[ing] on a boat sporadically.'" *Wilcox* at 536 (emphasis, alteration in original) (quoting *Becker v. Tidewater, Inc.*, 335 F.3d 376, 389 (5th Cir. 2003)).

Plaintiff does not argue his assignment to the DEEPWATER CHAMPION constituted a significant or permanent change in his employment assignment, nor does he point to any evidence in support of such an argument. Rather, plaintiff merely states his assignment to that vessel establishes seaman status. The Court has found no evidence in the record that plaintiff's essential duties changed with his assignment to the DEEPWATER CHAMPION – indeed, it appears plaintiff's primary duties continued to be collection and delivery of mud samples. Only when a maritime worker receives a new work assignment in which his essential duties are changed is the Court to limit itself to the time period of the new assignment. *Chandris* at 372. When the worker has not received a new work assignment, the Court is to determine his status in the context of his entire employment history. *Wilcox* at 536-37; *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1075-76 (5th Cir. 1986)(en banc); *see also Mudrick v. Cross Equipment Ltd.*, 250 Fed.Appx 54, 59, n. 2 (5th Cir. 2007)(one year of time sheets out of twenty-three months of employment history was "sufficient to satisfy the flexible requirement that we examine the Decedent's entire employment history to determine his status as a Jones Act seaman"). Because the Court finds plaintiff has failed to establish his assignment to the DEEPWATER CHAMPION involved any change in his employment duties, the Court finds plaintiff has failed to show his "last 28 day assignment to the DEEPWATER CHAMPION establishes seaman status." [Doc. 12-2, p. 6]

    **B.**    **Whether plaintiff was a seaman by virtue of the *Bertrand* exception**

Plaintiff contends during his employment with BHOOI, he was exclusively assigned to work "offshore on drillships or similar vessels," with the exception of "one short period" during the 2010 drilling moratorium. [Doc. 12-2, p. 5] Plaintiff does not dispute the vessels to which he was assigned were owned by a variety of companies and were not under common ownership or control.

Nevertheless, he contends he is a seaman by virtue of the exception to the "fleet rule" set forth in *Bertrand v. Int'l Mooring & Marine, Inc.*, 700 F.2d 240 (5th Cir. 1983).[1]

In *Bertrand*, plaintiffs were members of an anchorhandling crew employed by International Mooring and Marine. Plaintiffs brought suit under the Jones Act to recover for injuries suffered in a one-vehicle accident which occurred while returning from a job relocating a drilling rig. Both sides moved for summary judgment on the issue of seaman status. The district court granted summary judgment to the employer. The Court found that although the "anchor-handling crew was continuously subjected to the perils of the sea like blue water seaman and was engaged in classical seaman's work," plaintiffs were not seaman as a matter of law, because they worked aboard numerous vessels which had no common ownership or control. *Bertrand v. Int'l Mooring & Marine, Inc.*, 517 F.Supp. 342, 347, 348 (W.D.La. 1981).

On appeal, the Fifth Circuit reversed, finding "the district court's view of the group of vessels concept was too restrictive." *Bertrand*, 700 F.2d at 248; *see id.* at 245. The Fifth Circuit noted ninety percent of plaintiffs' work was performed aboard twenty-five vessels owned by various companies, and the remaining ten percent was spent preparing equipment for offshore vessel assignments. *Bertrand*, 700 F.2d at 246, 247. The crew ate and slept aboard the vessels. *Id.* at 247. Plaintiffs' tour of duty with a vessel was for the duration of their mission. *Id.* at 248. Thus, "the mission of the vessel and the plaintiff's job were coextensive; when plaintiffs finished their responsibilities, the

---

[1] A "fleet" for purposes of seaman status is "an identifiable group of vessels acting together or under one control." *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir. 1986)("We reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard"); *see also Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 557 (1997)("In deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman-status determination, the question is whether the vessels are subject to common ownership or control").

vessel's mission was completed. This should be contrasted with the situation in which the marine worker performs a particular specialized job that contributes toward the vessel's larger mission." *Id.* (internal citations, footnotes omitted). The Court further noted, "the anchorhandlers' work from the vessels was their primary duty, and not merely incidental to work on shore or a nonvessel." *Id.* at 248. In light of the foregoing factors, the Fifth Circuit held reasonable persons could conclude plaintiffs were Jones Act seaman. *Id.*

The following year, the Fifth Circuit again addressed the fleet rule in *Buras v. Commercial Testing & Engineering Co.*, 736 F.2d 307 (5th Cir. 1984). There, plaintiff was employed as "a coal sampler and temperature taker" who worked from various vessels and on land, primarily at two fleeting facilities. *Id.* at 308. After injuring his back, plaintiff brought suit under the Jones Act, contending seventy-five percent of his work was conducted from vessels. The district court found plaintiff was not a seaman and granted summary judgment in favor of his employer. Finding plaintiff had only a transitory (rather than a substantial) connection to the vessels upon which he worked, the Fifth circuit affirmed, reasoning in part:

> Although *Bertrand* thus expanded the concept of a fleet to encompass vessels used, but not owned or chartered, by the employer, we do not believe that it can fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled vessels for short periods of time that aggregate to comprise a substantial portion of his working time, nor do we believe that *Bertrand* rejected the identifiable or recognizable fleet requirement established by our prior cases. Rather, *Bertrand* must be read in light of the factual situation it involved. Our concern there was to prevent the denial of Jones Act seaman status as a matter of law to those claimants who are engaged in traditional maritime activity on a vessel or vessels comprising an identifiable fleet in every respect except common control or ownership. We noted that in *Bertrand* that "whether the different vessels were under common ownership or control was determined by the employer, not the nature of the claimants' work," 700 F.2d at 245, and that on occasion the claimants' employer chartered vessels directly. *Id.* It was clearly established, furthermore, that the *Bertrand* claimants were, arguably at least,

> "classical blue water" workers engaged in traditional maritime activities. We were unwilling to conclude, therefore, that the happenstance of a particular ownership or chartering arrangement should control the determination of seaman status as a matter of law.

*Id.* at 311-12; *see also St. Romain v. Industrial Fabrication and Repair Service, Inc.*, 203 F.3d 376, 380 (5th Cir. 2000) ("[T]he court in Bertrand was concerned with denying seaman status to anchorhandlers, traditional maritime workers, merely because of the contractual arrangements made by their employer. Our decisions after Bertrand have reaffirmed the essential principle that to qualify as a seaman an employee must establish an attachment to a vessel or to an identifiable fleet of vessels.")

Since *Buras*, the Fifth Circuit has continued to apply the "fleet rule" in narrow terms. For example, in *Langston v. Schlumberger Offshore Services, Inc.*, 809 F.2d 1192 (5th Cir. 1987), the Court held plaintiff was not a seaman where she performed thirty-two percent of her work on fifteen different vessels owned by ten unrelated owners, as she did not have a sufficient connection to a vessel or group of vessels. In *Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554, 557 (5th Cir. 1987), the Court held plaintiff, "a wireline operator who performed one specialized job for many different vessels," did not fall within the *Bertrand* exception, because "he did not perform the traditional duties of a blue water seaman" and did not work aboard drilling rigs "for the duration of their mission." In *Ardleigh v. Schlumberger Ltd.*, 832 F.2d 933, 934 (5th Cir. 1987), the Court held a wireline engineer was not a seaman, noting although plaintiff worked from vessels seventy percent of the time, he could "be classified as a seaman only if the thirty different vessels on which he worked constituted a 'fleet.'" Finally, in *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 377 (5th cir. 2001), the Court found a plug and abandonment worker was not a seaman, noting "when a group

of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control."

As previously noted, in this matter the Court has examined plaintiff's work history for the last five years of his employment. During that time, eighty-two percent of plaintiff's work was performed from vessels; eighteen percent was performed from land. Approximately sixteen percent of plaintiff's work was performed from a vessel owned by Transocean.[2] Under these facts, the Court finds plaintiff does not meet the second prong of the *Chandris* test, as the Court finds he has not demonstrated "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* at 368.[3]

## IV. Conclusion

For all of the foregoing reasons, the Court finds plaintiff was not a seaman for purposes of the Jones Act. Accordingly, plaintiff's motion for summary judgment [Doc. 12] is DENIED, and defendant's motion for summary judgment [Doc. 21] is GRANTED.

---

[2] Indeed, it appears the only group of vessels sharing common ownership or control to which plaintiff was assigned more than 30% of the time were those of ENSCO, who is neither a defendant in this matter, nor plaintiff's employer. *See e.g. Roberts* at 377 (to meet the 30% threshold, the vessel or vessels must be under the "defendant-employer's common ownership or control").

[3] Plaintiff argues BHOOI has not carried its burden because it has not provided plaintiff's entire employment history. Plaintiff further argues this Court must examine plaintiff's handwritten notes to determine whether he meets the second prong of the seaman status test. The Court has reviewed plaintiff's notes, but they are not sufficiently detailed to be of any benefit to this analysis. Further, it is incumbent upon plaintiff to point the Court to that portion of his 55 page notebook upon which he relies. Finally, the Court again notes the Fifth Circuit decision in *Mudrick*, 250 Fed.Appx. at 59, n. 2, which found one year of time sheets out of a twenty-three month employment history was "sufficient to satisfy the flexible requirement that we examine the Decedent's entire employment history to determine his status as a Jones Act seaman."

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 14 day of June, 2016.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE