UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Lebrun                                                    Civil Action No. 15-01828

versus                                           Magistrate Judge Carol B. Whitehurst

Baker Hughes Inc et al                           By Consent of the Parties

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Medical Causation filed by Plaintiff, Jonathan Lebrun, [Rec. Doc. 80], Defendant, Transocean Offshore Deepwater Drilling, Inc's ("Transocean") Memorandum in Opposition [Rec. Doc. 101], and Plaintiff's Reply [Rec. Doc. 104] and Plaintiff's Reply thereto [Rec. Doc. 107]. The Court conducted a hearing with oral argument on the Motion on October 18, 2017. For the oral reasons assigned in the hearing and for the reasons that follow, the Motion will be denied.

*I. Background*

Plaintiff, Jonathan Lebrun, worked for Baker Hughes Oilfield Operations, Inc. ("BHOOI") from December 2005 until April 24, 2015. Plaintiff was assigned to work as a sample catcher or "mudlogger"[1] aboard Transocean's drillship, DEEPWATER CHAMPION, from March 13, 2015 until April 24, 2015. Plaintiff alleges while he

---

[1] Plaintiff's job duties were to collect mud samples from shale shakers and deliver the mud samples to on-site data engineers and geologists for analysis. *R. 44.*

was aboard the DEEPWATER CHAMPION he collected the mud samples in an enclosed, air tight "shaker shack" located above the main deck. He further alleges he injured his lower back by having to repeatedly pry open a vacuum sealed, 1/4 inch steel blast-proof shaker house door during his 12-hour shifts. Plaintiff was terminated by Baker Hughes on April 24, 2015 due to a company-wide Reduction in Force.

Plaintiff filed this action alleging claims under the Jones Act. *R. 1*. On June 14, 2016, this Court found that Plaintiff was not a Jones Act seaman. *R. 44*. In his Second Amended Complaint, Plaintiff alleged a claim for unseaworthiness as a Sieracki seaman as well as for negligence and gross negligence under the general maritime law; alternatively, Plaintiff alleged his action arises under the Longshore and Harbor Workers Compensation Act ("LHWCA") and the general maritime law. *R. 56*. On August 18, 2017, the Court denied Plaintiff's Motion for Summary Judgment for Sieracki Seaman status. *R. 109*. Thus, Plaintiff retained a negligence claim against Transocean, the owner of the DEEPWATER CHAMPION.

## II. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir.2002). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes XX, Inc.*, 109 F.3d 1070, 1074 (5th Cir.1997). When the moving party, has met its Rule 56(c) burden, the nonmoving party, cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir.2004).

*III. Legal Analysis*

Plaintiff filed this Motion moving the Court to find that there is no genuine dispute as to any material fact that Transocean's negligence substantially caused and/or contributed to Plaintiff's lumbar injuries and resulting surgery. Specifically, Plaintiff contends that there is no genuine dispute that the DEEPWATER CHAMPION's "enclosed, vacuum sealed, air tight shaker shack" sealed the shaker door shut causing Plaintiff "to repeatedly wrench the door open" leading to his back injury.

3

Plaintiff claims his lumbar problems began one week after he left the DEEPWATER CHAMPION. He notes that Baker Hughes' Review and Comments in 2014 and early 2015 demonstrate that Plaintiff was "reliable and hard working" with "No accidents" and the company had "No issues w/ Mr. Lebrun. Good solid, dependable, reliable employee." *R. 80-6, Exh. 15*. He further notes that he has successfully passed a variety of physical and training tests. *Id. at Exh. 16.*

In support of his claim that his repeated opening of the "a vacuum sealed" shaker shack door while he was working on the DEEPWATER CHAMPION caused his lumbar injury, Plaintiff cites the depositions of five co-workers on the DEEPWATER CHAMPION. *R. 80-4, Exh. 1, Depo. Of McDonald; 80-5, Exh. 11, Demo. Of Lookofsky; 80-5, Exh. 12, Demo. Of Godin; 80-5, Exh. 13; Demo. Of Raines; 80-7, Exh. 7, Demo. Of Martin.* Plaintiff contends that the testimony of these individuals provides that the "shaker shack doors were hard to open." *R. 80-2, p. 7.* He further contends that they state that Plaintiff had to exit and reenter the shaker shack to deliver cutting samples about 40 (to 70) times each 12-hour shift. *Id.* Plaintiff suggests that because none of these employees knew or understood why the shaker shack was enclosed rather than open like those on some vessels, there must have been some negligence on the part of Transocean for enclosing it.

On April 30, 2015, two weeks after Plaintiff claims his lumbar problems began,

4

he was seen by Dr. Ilyas Munshi, a neurological surgeon.[2] Two weeks later, on May 18, 2015, Dr. Munshi performed a lumbar laminectomy, medial facetectomy and invasive decompression of the spinal cord and nerve roots on May 18, 2015. *R. 80-7, Exh. 22*. Plaintiff did not return to work after his surgery and states that the Social Security Administrations granted him disability payments beginning November 2015. *R. 80-7, Exh. 23*. Plaintiff asserts that Dr. Munshi stated in his May 11, 2017 Report:

> I conclude with a reasonable degree of medical certainty that the plaintiff's work aboard the last ship where he had to force open an airtight door dozens of times during his work day, for three to four week at a time caused him to become symptomatic to the point of disabling the patient with pain and in turn caused the patient to have a TLOF with instrumentation.

*R. 80-7, Exh. 24, pp. 37-38*.

Finally, Plaintiff cites three cases which he asserts support his contention that because he was capable of performing his work before the alleged injury but shortly thereafter he was so badly injured that he required surgery—his disability is presumed to have been caused by his difficulty in repeatedly opening the shaker shack door. *DePerrodil v. Bozovic Marine, Inc.*, 2015 WL 8542829 (W.D. La. 2015) (vacated on other grounds); *Housley v. Cerise,* 579 So.2d 973, 980 (La. 1991); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999).

---

[2] In his Supplemental Deposition Plaintiff stated his fiance's chiropractor recommended that he go to Dr. Munshi. *R. 80-5, Exh. 14, pp. 3738.*

Defendant Transocean opposes Plaintiff's summary judgment motion as "wholly improper" as it is "based on inadmissible hearsay, and ... in frank conflict with Dr. Munshi's deposition testimony given under oath." *R. 101, p. 1*. First, Transocean asserts that Plaintiff's reliance on "the presumption of causation" is misplaced. Here, Plaintiff alleges an unwitnessed injury in which the mechanism of the alleged injury is disputed by Transocean. In *DePerrodil*, *Housely* and *Curtis*, the plaintiffs all presented convincing evidence of a discrete moment of acute injury caused by a specific incident—e.g. in *DePerrodil* the plaintiff fell due to rough seas and the negligence of the vessel operator; in *Housley*, the plaintiff slipped and fell down stairs and began to experience symptoms of injury contemporaneous with the incident; in *Curtis*, plaintiffs were exposed to benzene and became ill.

Further, Transocean asserts that Dr. Munshi's credibility is at issue based on the fact that Mr. Munshi's causation statement is based on the history given to him and his staff by Plaintiff. Defendant points to numerous factual disputes in Plaintiff's discovery. For example, Plaintiff contends he told his supervisor, Matt McDonald, that he needed a back brace because "pulling on that door" was putting stress on his back. *R. 80-5, p. 30*. McDonald stated in his deposition, however, that he did not recall Plaintiff requesting a back brace. *R. 101-7, p. 22*. Plaintiff's co-worker, Lookofsky, testified that Plaintiff never asked him about a back brace or told him that

6

his back was bothering him while on the DEEPWATER CHAMPION. *R. 101-6, p. 30.* When Plaintiff left the DEEPWATER CHAMPION on April 6, 2015, he stated on the Departure Log that he had not injured himself while on board. *R. 101-3.* On April 24, 2015, Plaintiff met with his onshore supervisor, Robert Guidry and a Human Resources representative who advised him that he was being terminated due to a reduction in force at Baker Hughes and gave him a Severance Release Agreement to take with him and read. Plaintiff stated that at that time he was "taking a lot of over-the-counter analgesics" and he wanted to talk with Guidry about his back. *R. 101-12, pp. 89-90.* He told Guidry he wanted to talk with him, but did not say about what. Guidry told him they would talk the next day when Plaintiff came back to return his uniform. Upon his return, Plaintiff testified he was told that Guidry was not in and to leave his uniform at the front desk. *Id., pp. 99-104.* Contrary to Plaintiff's account of his April 25, 2015 meeting with Guidry, in his Affidavit, Guidry states that he met with Plaintiff on April 25, 2015, that Plaintiff said nothing of a back injury and that Plaintiff did not appear to be suffering from any injury or be in any pain of any kind. *R. 101-9; 101-10.*

Transocean also asserts that Dr. Munshi's Report contradicts his earlier deposition testimony. In his September 22, 2016 deposition, Dr. Munshi confirmed that Plaintiff or the person with him provided the information about his history in the

7

initial office visit. *R. 101-2, pp. 11-12*. On that date, when asked if his injury was related to his job Plaintiff wrote "Not applicable." *Id.* When asked what caused his symptoms, Plaintiff stated he could not pinpoint anything in particular as the cause of his pain. *Id. at p. 14*. Dr. Munshi testified that it was "over the subsequent visits .... after surgery over time" that Plaintiff mentioned "that he's worked for many years has a lot of back problems... did heavy lifting, and ... his problems could be related to that." *Id. at p. 19*. He further stated that he did not put this information in Plaintiff's chart. *Id. at pp. 20-21*. Transocean points out that now Dr. Munshi states in his Report, "I am informed" that the shaker shack door is now what caused Plaintiff's low back pain. *R. 80-7, Exh. A*.

The Court agrees that because issues of fact and credibility remain, the issue of medical causation before the Court is not ripe for summary judgment and must be resolved by a trier of fact. [3]

## IV. Conclusion

A motion for summary judgment can only be granted if the pleadings, depositions, and affidavits submitted show that "there is no genuine dispute as to any

---

[3] In his Reply Memorandum, Plaintiff argued that Transocean failed to comply with LR 56.2 by failing to specifically admit or deny several of Plaintiff's Statements of Uncontested Facts filed in support of this Motion. *R. 107*. Because Transocean merely objected to rather than controvert Plaintiff's Statement of Uncontested Facts, at the hearing with oral argument Plaintiff moved the Court to deem Plaintiff's Uncontested Fact admitted. The Court denied Plaintiff's oral motion.

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Before a court can find that there are no genuine issues of material facts it must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Ladue v. Chevron, U.S.A., Inc.,* 920 F.2d 272 (5th Cir. 1991).

Here, the parties each submit different versions of the relevant facts. A case in such a posture is not properly disposed of by summary judgment. The Court will deny Plaintiff's Motion For Summary Judgment on Medical Causation.

THUS DONE AND SIGNED this 1st day of November, 2017.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE